**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

THOMAS SCARDUZIO,

                      Plaintiff,                      **MEMORANDUM &**
                                                              **ORDER**
                                                              CV 20-2226 (GRB)(AYS)

          -against-

NORTH SHORE TOWERS APARTMENTS, INC.,

                      Defendant.


-----------------------------------------------------------------X

**GARY R. BROWN, United States District Judge:**

      Plaintiff Thomas Scarduzio ("Plaintiff") brings this action for unpaid severance compensation against his former employer, North Shore Towers Apartments, Inc. ("Defendant"). Plaintiff seeks declaratory relief and monetary damages under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a),[1] for the alleged breach of a collective bargaining agreement between, among other parties, Defendant and Plaintiff's former union. Pending before the Court is Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docket Entry ("DE") 9. For the reasons set forth below, the Court hereby GRANTS Defendant's motion and dismisses this case.

### I.     Factual Background

      As set forth in the Complaint, Plaintiff commenced employment with Defendant in or around 1989. DE 1 ¶ 13. Plaintiff then worked for Defendant until his retirement in or around June 2019; throughout this period, Plaintiff was a member of the International Brotherhood of Electrical Workers, AFL-CIO, Local No. 3 (the "Union"). *Id.* ¶¶ 14-15. At the time of his

---

[1] Section 301 establishes that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

retirement, a collective bargaining agreement (the "CBA") was in place between Defendant and Plaintiff's Union (as well as certain other unions); due to Plaintiff's union membership and his full-time employment with Defendant, Plaintiff's employment was therefore "subject to the terms and conditions" of this CBA. *Id.* ¶¶ 18-19. Section 10 of the CBA sets forth provisions under which certain employees may become entitled to severance pay, contingent on the duration of their employment with Defendant. *Id.* ¶¶ 20-22. Plaintiff claims that, under these provisions, he was entitled to severance pay "in an amount equivalent to twenty-seven (27) weeks pay" due to his thirty years of employment with Defendant. *Id.* ¶¶ 24-25. However, Defendant allegedly failed to issue this severance pay to Plaintiff. Accordingly, Plaintiff filed suit on May 18, 2020, seeking to recover the severance pay; Defendant subsequently filed the instant motion on May 28, 2020. This Order follows.

## II.     Standard of Review

"The court, in deciding a Rule 12(b)(6) motion to dismiss a complaint, is required to accept all 'well-pleaded factual allegations' in the complaint as true." *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "The court must also construe all reasonable inferences that can be drawn from the complaint in the light most favorable to plaintiff." *Id.* at 75 (citation omitted). However, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "plausibility standard" is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Therefore, "[a] dismissal pursuant to Rule 12(b)(6) 'is inappropriate unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him or her to relief.'" *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)).

**III.    Discussion**

Defendant's motion is essentially predicated on the argument that Plaintiff failed to exhaust the grievance and arbitration procedures set forth in the CBA.[2] Three sections of the CBA are, therefore, of particular relevance here. Article 10 establishes the conditions for the right to severance pay:

> Article 10. Severance Pay
>
> 10.1 Except as provided in paragraph 10.2, Employees with substantial continuity of employment and employed for the following periods of time shall receive severance pay at the ordinary rate as follows: those employed at least one year but less than three years, one week's pay; at least three years but less than five years, two week's pay; in excess of five years shall receive two week's pay plus one additional week's pay for each year of additional service in excess of five years.
>
> 10.2 The following Employees shall not receive severance pay:
>> 10.2(a) An employee laid-off because of a reduction or decrease in force and who at the time of layoff had been continuously employed by the Employer for a period of less than one year;
>> 10.2(b) An employee discharged for incompetence or inefficiency and who at the time of discharge had been continuously employed by the Employer for a period of less than five years;
>> 10.2(c) An employee whose employment shall be terminated on the grounds of ill health and who at the date of termination of employment had been continuously employed by the Employer for a period of less than five years;
>> 10.2(d) No severance allowance shall be paid to employees terminated for just cause regardless of length of employment.
>
> 10.3 An employee who after having received a severance allowance from the Employer shall thereafter be rehired or reinstated by the Employer shall be entitled to retain the severance allowance previously received by him but is he shall thereafter be entitled to receive a further severance allowance, then the second severance allowance shall be the sum computed in the manner hereinabove

---

[2] Defendant also initially raised the argument that plaintiff's breach of contract claim is preempted by § 301 of the LMRA (DE 9 at 2, DE 11 at 1-2), but has since waived this argument (DE 16 at 1 n.2). Nevertheless, it is worth noting that, to the extent that this argument is predicated on the idea that § 301 does not permit individual claims by employees, such a construction is in error. *See DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 163 ("It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement."). Indeed, the cases that Defendant cites in support explicitly did not dismiss the plaintiffs' state law claims upon finding them preempted by § 301, but instead recast them as § 301 claims. *See, e.g.*, *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 862-63 (1987); *Lever v. Entergy Nuclear Operations Inc.*, No. 15-CV-3327(KAM), 2016 WL 1627619, at *2-6 (E.D.N.Y. Apr. 22, 2016). This same reasoning requires that the Court reject Defendant's argument, DE 16 at 5-7, that Plaintiff has no right to bring his claim as a third-party beneficiary of the CBA. *See Smith v. Evening News Ass'n,* 371 U.S. 195, 200–01 (1962).

>provided but reduced, however, by the amount of the first severance allowance theretofore received by him.

DE 11-1 at 11-12.[3]  Article 12 sets forth the grievance procedure at issue:

>Article 12. Miscellaneous Provisions
>
>. . .
>
>12.4 GRIEVANCE PROCEDURE: A four step procedure will be instituted:
>Step 1: The Shop Steward shall take up the grievance with the Chief Engineer or his assistant.
>Step 2: In the event the grievance is not resolved, it shall be reduced to writing and presented to the Business Representative of the Union and to the Management for written response.
>Step 3: It shall be brought to the attention of the Assistant General Manager for resolution.
>Step 4: If it is not resolved by Union and Management at the level, it will be submitted to arbitration as provided for as in the Agreement.

*Id.* at 13-14.  Finally, Article 5 details the arbitration procedure:

>Article 5. Arbitration
>
>5.1 If any dispute shall arise between the Employer and the Union in connection with this Agreement, the Union and the Employer shall make an earnest effort to settle such dispute.
>
>5.2 If the Employer and the Union fail to reach a mutually satisfactory adjustment of any dispute arising in connection with the interpretation or application of this Agreement, either party may commence an arbitration under the auspices and rules of the American Arbitration Associations, the decision and award being binding upon the Employer and the Union and the costs of Arbitration being borne equally by the Employer and the Union.

*Id.* at 7.

---

[3] Defendant attached the CBA to their initial reply brief, DE 11.  However, the Court may examine documents "attached to the complaint or incorporated by reference" to the complaint.  *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000).  Plaintiff repeatedly cites to the CBA throughout the Complaint, *see generally* DE 1, and his claim fundamentally rests on a right derived from the CBA.  Accordingly, the Court may appropriately examine the CBA at this stage.

*Arbitration of Plaintiff's Claim*

Defendant first argues that Plaintiff's severance pay claim "requires an interpretation of Articles 10 and 12.4," and that § 301 "requires that an arbitrator, not the court, be responsible in the first instance for interpreting the labor contract." DE 9 at 2.  Therefore, in Defendant's view, Plaintiff's claim "must first be presented" through the CBA's arbitration procedure.[4]  *Id.*

The right that Plaintiff asserts is necessarily derived from the CBA, as Plaintiff himself concedes.  *See* DE 14 at 1 (Plaintiff "asserts that he was denied a personal benefit to which he was entitled under the [CBA].").  Defendant is therefore correct that the merits of this claim require interpretation of the CBA.  *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218 (1985) ("Because the right asserted . . . derives from the contract . . . any attempt to assess liability here inevitably will involve contract interpretation.  The parties' agreement as to the manner in which a benefit claim would be handled will necessarily be relevant to any allegation that the claim was handled in a dilatory manner."); *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 207-08 (2d Cir. 2019).  However, despite Defendant's assertion to the contrary, § 301 does not *universally* require that an arbitrator be the first to so interpret the labor contract.  Although the Supreme Court held in *Allis-Chalmers* that it is "a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance," this was addressed to circumstances where "[t]he parties . . . have agreed that a neutral arbitrator will be responsible, in the first instance, for interpreting the meaning of their contract."  471 U.S. at 219-20.  Thus, in order to determine whether arbitration is required, a court must consider, among other factors, (1) "whether the parties agreed to arbitrate," and if so, (2) the "scope" of the arbitration clause at issue.[5]  *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (citation omitted).  As Article 5 of the CBA makes clear, the parties to the contract clearly agreed to arbitrate at least *some* range of disputes.  Therefore, the Court turns to the scope of this arbitration clause.

---

[4] As an initial matter, it is well established that resolving the arbitrability of a claim is an issue for judicial determination, rather than arbitration.  *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("It is well settled in both commercial and labor cases that whether parties have agreed to submi[t] a particular dispute to arbitration is typically an issue for judicial determination." (quotations and citations omitted)).

[5] Indeed, Defendant's interpretation of *Allis-Chalmers* would lead to the absurd result that even a contract *wholly lacking* an arbitration clause would nevertheless require interpretation by an arbitrator, rather than a court, simply because it happens to be a labor contract.

"Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond [a court's] purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* at 172 (citation omitted). "Broad" clauses are understood to "purport to refer all disputes arising out of a contract to arbitration," while "narrow" clauses "limit arbitration to specific types of disputes." *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988). The arbitration clause set forth in Article 5 extends to "any dispute [that] arise[s] between the Employer and the Union in connection with" the CBA. DE 11-1 at 7. Although the Second Circuit has held that clauses "in which parties agree to submit to arbitration . . . 'any and all disputes'" are broad, *McDonnell Douglas*, 858 F.2d at 832 (citation omitted), Article 5 is distinguishable because it limits its application to disputes "between the Employer and the Union," DE 11-1 at 7. It is therefore limited "to [a] specific type[] of dispute[]." *McDonnell Douglas*, 858 F.2d at 832. This interpretation is reinforced by the existence of the grievance procedure set forth in Article 12 of the CBA, which clearly contemplates the existence of other types of disputes, i.e., those between employees and Defendant. Although the grievance procedure may incorporate (where necessary) arbitration as provided for in Article 5, this is merely the *occasional* conclusion of a process that is initiated (at least implicitly) by an employee, not the Union itself. The arbitration clause only applies once the grievance has proceeded through each step and has, in effect, transferred from one brought by the employee to one brought by the Union itself. Under the CBA, disputes between an employee and Defendant that have not yet reached this stage—like Plaintiff's claim here—therefore do not appear to be subject to the arbitration clause in Article 5. Accordingly, the Court may properly address Plaintiff's claim.[6]

*Applicability of the Grievance Procedure*

Defendant next argues that Plaintiff failed to avail himself of the CBA's grievance procedure, a failure which it contends "is fatal to his claim." DE 9 at 2. Indeed, the Supreme

---

[6] To be sure, this interpretation rests on a somewhat technical distinction between the grievance procedure and the arbitration clause. Arguably, one could read the grievance procedure to incorporate the arbitration clause by reference, therefore making "any dispute" *at all* – even those between an employee and Defendant, like Plaintiff's claim here – subject to the arbitration clause. However, this is ultimately a distinction without a difference because, as set forth below, Plaintiff's claim must be dismissed due to Plaintiff's failure to engage in this grievance procedure.

Court has established that "an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983); *see also Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965) ("[F]ederal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress."). In response, Plaintiff argues that the grievance procedure contained within the CBA "relates only to disputes between the Union and the Defendant," and so there is no requirement that employees – including Plaintiff – submit to the grievance procedure. DE 10 at 3, DE 14 at 3.

To be sure, Article 12 does not explicate what disputes it is meant to address: instead, it merely establishes that "A four step [grievance] procedure will be instituted." For the sake of comparison, the Second Circuit has found grievance clauses to govern an employee's claim where they were explicitly defined as "the sole and exclusive means to be used by any employee or group of employees . . . for adjusting and settling any dispute or issue" and therefore were "the exclusive means for settling all disputes between employees and [their employer]." *Dougherty v. American Tel. & Tel. Co.*, 902 F.2d 201, 202, 202 n.1 (2d Cir. 1990). Similarly, grievance clauses may apply if they "specifically provide[] for grievance and arbitration of the conduct that plaintiff complains of." *Lever v. Entergy Nuclear Operations Inc.*, No. 15-CV-3327(KAM), 2016 WL 1627619, at *5 (E.D.N.Y. Apr. 22, 2016). In contrast, grievance procedures have been held not to apply where they were "expressly made inapplicable" to the type of claim brought by the plaintiff. *Cephas v. MVM, Inc.*, 520 F.3d 480, 489 (D.C. Cir. 2008). The grievance procedure set forth in Article 12 seems to fall somewhere between these cases: it does not specifically (or generally) *include* claims like Plaintiff's within its ambit, but neither does it specifically *exclude* such claims.

However, the Supreme Court has established that doubts as to whether a grievance procedure covers a particular dispute should be resolved in favor of coverage. In *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, the Court held that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." 363 U.S. 574, 582–83 (1960). The Supreme Court later extended this precept – that doubts should be resolved in favor of coverage – to include grievance procedures. *See Republic Steel*, 379 U.S. at 659 ("Any doubts [as to whether an employee may

avoid the contracted grievance procedure] must be resolved against such an interpretation."). Indeed, the Court explicitly observed in *Republic Steel* that the use of indefinite language "does not of itself reveal a clear understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure . . . in favor of a judicial suit," and in the absence of such a "clear understanding," the grievance procedure should be understood to govern an employee's claim. *Id.* at 658-59. Based on these principles, it would appear that the grievance procedure here governs Plaintiff's claim.

A close examination of the terms of the grievance procedure, as well as the other provisions of the CBA, confirms this conclusion. Article 5 clearly governs "any dispute" between Defendant and the Union; as suggested above, the grievance procedure set forth in Article 12 appears to be addressed to other types of disputes. This conclusion is reinforced by the fact that the category of disputes that would likely arise between the Union and Defendant under the CBA – e.g., regarding lockouts, failure to make pension contributions, or company-wide payment issues – will necessarily be broad, macro-level issues that impact a substantial share of employees. The steps of the grievance procedure are clearly inappropriate for such disputes, and in fact seem tailored to individual grievances. For example, Article 12 establishes that a grievance will initially be verbal (as it is only later "reduced to writing") and will first be taken up by a minor Union representative (minor in comparison, at least, to the subsequent, and ostensibly more senior, "Business Representative of the Union"). A grievance is then, if necessary, "presented to" this Business Representative. Plaintiff provides no explanation for why a dispute between the Union and Defendant should first be taken up in such an informal manner by a minor Union representative; there can *be* no explanation for why such a dispute – by definition one familiar to the Union – must be "presented to" a representative of the Union. The only rational explanation is that explicated above: that the grievance procedure is meant to be initiated by employees, and that – if necessary – it will ultimately be brought to (and taken up by) the senior management of the Union. This construction is supported by the Supreme Court's understanding of the role of grievance procedures generally. *See Republic Steel*, 379 U.S. at 653 ("[U]nless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. . . . Union interest in prosecuting employees grievances is clear. Such activity

complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract.").[7]

Plaintiff argues that the doctrine of *contra proferentem* dictates the opposite conclusion. Under this doctrine, "courts will construe an ambiguity in agreement against the drafter." *D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 412 (E.D.N.Y. 2015). By Plaintiff's reasoning, he did not participate in the drafting of the contract, and therefore any ambiguities should be resolved in his favor. However, "the Second Circuit has made clear that courts should not resort to *contra proferentem* until after consideration of extrinsic evidence to determine the parties' intent." *Id.* (citing *M. Fortunoff Corp. v. Peerless Ins. Co.*, 432 F.3d 127, 142 (2d Cir.2005)) (quotation marks omitted). Indeed, "*contra preferentem* [sic] is used only as a matter of last resort after all aids to construction have been employed but have failed to resolve the ambiguities in the written instrument." *U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 573 (2d Cir. 1991). As established above, the Supreme Court has provided such "aids to construction" for grievance procedure clauses, which dictate that ambiguity be resolved in favor of applying a grievance procedure. Moreover, as discussed above, Plaintiff's construction of Article 12 does not provide the most logical resolution of the ambiguity in the contract's terms. Accordingly, the Court finds that it is inappropriate to apply the doctrine of *contra proferentem* to resolve this issue.[8]

The Court therefore finds that Plaintiff's claim is governed by the grievance procedure set forth in Article 12. However, Plaintiff does not appear to have even *attempted* to engage in this procedure. Rather, Plaintiff repeatedly asserts – incorrectly – that the CBA "does not require Plaintiff to undergo a grievance process . . . to enforce his rights." DE 1 ¶ 27; *see also* DE 10 at 3, DE 14 at 3. Because Plaintiff "must exhaust" the grievance procedure "[b]efore bringing such

---

[7] Plaintiff is not saved by the fact that he is, technically, no longer an employee of Defendant. *See Republic Steel*, 379 U.S. at 656 ("Grievances depending on severance claims are not critically unlike other types of grievances. Although it is true that the employee asserting the claim will necessarily have accepted his discharge as final, it does not follow that the resolution of his claim can have no effect on future relations between the employer and other employees. Severance pay and other contract terms governing discharge are of obvious concern to all employees, and a potential cause of dispute so long as any employee maintains a continuing employment relationship.").

[8] In fact, it is unclear whether the doctrine of *contra proferentem* may be applied to collective bargaining agreements *at all*, given that it does not apply "in situations where . . . both parties [to the contracting process] are represented by counsel." *D'Amato*, 432 F.3d at 412. "The Second Circuit has not stated" whether this doctrine "is applicable in the collective bargaining arena." *Webb v. GAF Corp.*, 936 F. Supp. 1109, 1118 (N.D.N.Y. 1996). However, the only other circuit court to address the issue has found that *contra proferentem* "is not automatically or universally applied to [certain] contracts, especially those that result from arms-length bargaining by parties of equal power, as in the case of collective bargaining agreements." *Eley v. Boeing Co.*, 945 F.2d 276, 280 (9th Cir. 1991).

an action [for breach of a collective bargaining agreement]," his claim must be dismissed for failure to exhaust this procedure.  *Dougherty*, 902 F.2d at 203.

To be sure, the Supreme Court has recognized that the rule that "an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement . . . works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation."  *DelCostello*, 462 U.S. 151, 163-64.  In such circumstances, "an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id.* at 164.  To make such a claim, however, an employee must actually *engage in* (or attempt to engage in) the grievance process.  As the Supreme Court held in *Vaca v. Sipes*, before an employee "may obtain judicial review of his breach-of-contract claim," he must have "fail[ed] to secure relief through the contractual remedial procedures"; that is, "the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement."  386 U.S. 171, 184-85 (1967).  Again, because Plaintiff has failed to even *attempt* to engage in the grievance procedure, his claim must be dismissed.

## IV.     Conclusion

For the reasons set forth above, it is hereby ORDERED that Plaintiff's claim for breach of the Collective Bargaining Agreement under Section 301(a) of the Labor Management Relations Act is DISMISSED.  The Clerk of the Court is directed to enter judgment consistent with this Order.

**SO ORDERED.**

Dated: Central Islip, New York
      February 23, 2021

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge
